Laclede J. Howard, Respondent, v. William C. Jones et al., Appellants.

### March 8, 1881.

Where one loans money and takes a note therefor upon the maker's promise of M.'s indorsement thereon, M.'s subsequent indorsement, without any knowledge of the facts or the promise, is without consideration.

Appeal from the St. Louis Circuit Court, Thayer, J.

*Reversed and remanded.*

A. M. Sullivan, for appellant McDonald: "Though one not a party to a note who puts his name on the back of the note prior to its being put into circulation will be presumed to be a joint maker, yet if such indorsement is made after delivery of the note, the indorser would be held only as guarantor, and would not be chargeable as such unless a consideration were shown." — *Stagg* v. *Linnenfelser*, 59 Mo. 336 (citing *Tenney* v. *Prince*, 4 Pick. 385); *Union*

*Bank* v. *Willis*, 8 Metc. 504;, Story on Prom. Notes, 133, sects. 474 (note 2), 467 (note 3); *Samson* v. *Thornton*, 3 Metc. 275 ; *Hammond* v. *Chamberlain*, 26 Vt. 406. "A note cannot be treated as an escrow after it has been delivered to the payee ; in order to have that effect, the delivery must be to a third person." — *Jones* v. *Shaw*, 67 Mo. 667 ; *Henshaw* v. *Dutton*, 59 Mo. 139. Having been sued as an indorser there could be no recovery against Mac-Donald, in the same action, as guarantor or as surety. — *Perry* v. *Barret*, 18 Mo. 140 ; *Graham* v. *Ringo*, 67 Mo. 324 ; *Greely* v. *Cohen*, 7 Mo. App. 596. " One who becomes a party to a note after it has once been delivered and the consideration has passed between the original parties, incurs no liability, unless there is some new consideration and a redelivery of the note." — *Williams* v. *Williams*, 67 Mo. 661 ; *Green* v. *Shepherd*, 5 Allen, 570 ; *Glenn* v. *Lehnen*, 54 Mo. 45.

TAYLOR & POLLARD, for appellant Lodge : The court erred in not holding that the erasure of Johnson's name and the adding of MacDonald's operated as a discharge of Lodge from liability on the note. — *Gantner* v. *Walsh*, 5 El. & Bl. 82 ; *Hall* v. *McHenry*, 19 Iowa, 523 ; *Wallace* v. *Jewell*, 21 Ohio, 171 ; *Henry* v. *Coates*, 17 Ind. 161 ; *Lunt* v. *Silver*, 5 Mo. App. 186.

JAMES L. BLAIR, for the respondent : It was of the essence of the agreement that MacDonald should indorse the note ; he did so, and is estopped from denying his indorsement, because he allowed the respondent to think he did so in accordance with the original agreement. — *The State to use* v. *Potter*, 63 Mo. 212, 225 *et seq.;* Pars. on Con. 793 ; *Bigelow* v. *Cotton*, 13 Gray, 309. The contract between Jones and the respondent was executory, and did not become complete until MacDonald's indorsement. — *Fletcher* v. *Peck*, 6 Cranch, 136 (remarks of Marshall, C. J.) ; 2 Bla. Comm. 447 ; 1 Pow. on Con. 234 ; Metc. on Con. 13, 14.

LEWIS, P. J., delivered the opinion of the court.

The plaintiff declares on a promissory note for $500 executed by the defendant Jones, in favor of the defendant Lodge, and by him indorsed and delivered to the defendant McDonald, who indorsed and delivered the same to the plaintiff. Protest and notice are averred in due form. The court gave judgment against all the defendants.

From the undisputed testimony and the finding of facts announced by the court, the transactions between the parties appear to have been as follows: The defendant Jones applied to the plaintiff for a loan of $500, telling him that the defendants Lodge and MacDonald would be indorsers of the note for the repayment, and the plaintiff signified his acceptance of the proposal. Afterwards the defendant Jones tendered to plaintiff a note signed by himself, with the indorsements of the defendant Lodge, and Charles P. Johnson, saying that MacDonald was out of town, but that he would surely indorse the note upon his return. At this time the subject had never been mentioned to MacDonald, and Jones so informed the plaintiff, assuring him, however, of his confidence that MacDonald would indorse, and pledging himself to return the money immediately, in the event of a refusal. Upon these assurances the plaintiff gave Jones a check for the money and took the note into possession as it stood. MacDonald returned some days later, and was requested by Jones to give his indorsement for the loan of $500. After stipulating for and receiving a certain guaranty of indemnity, MacDonald went with Jones to the plaintiff, who produced the note from his pocket, and there wrote his name across the back of the paper. The plaintiff at the same time erased the indorsement of Johnson. MacDonald had then no knowledge of the previous transactions, and supposed that the money for the note was yet to be advanced by the plaintiff to Jones.

The learned judge before whom this cause was tried, in stating his " conclusions of law," said : " The material

inquiry is, whether plaintiff parted with his money, relying on the promise that he was to have MacDonald's security. If he did so part with his money, there was an adequate consideration, even though the money was paid before the indorsement was made. The two acts need not have been concurrent acts. * * * But the case at bar is clearly distinguished from the cases cited, in the single fact clearly proved at the trial, that the money was originally loaned on the promise of MacDonald's name. It cannot be said, therefore, that the plaintiff paid nothing for the obligation assumed by MacDonald. He did pay $500; and the fact that he paid the money in advance of getting the obligation is of no importance.''

This is clear and satisfactory, as an utterance of what justice may demand in behalf of the plaintiff. But it stops short of demonstrating that MacDonald is the proper person to satisfy that demand. It is not enough, in any case, that one party will suffer an injustice, if denied the redress he seeks. It must also appear that the adverse party has in some way contributed to the possible injustice, or has done something which causes the law to fix upon *him* the duty of preventing it. It is inconceivable, in this case, that MacDonald should be held to pay for the promise of his name to the plaintiff, unless he himself has either made or authorized that promise, or has afterwards ratified it, under circumstances which would impart all the efficacy of an original undertaking. The whole question of Mac-Donald's liability must be tested by MacDonald's acts.

That, at the time when the money was loaned, Mac-Donald neither made nor authorized any promise of his indorsement, is conceded. If, therefore, he is to be held because of the promise made by Jones, it must be by virtue of some subsequent act of his which was capable of drawing to him the consequences of a promise made by himself. In other words, there must have been a ratification of the act of Jones. But it is elementary law that no act is

capable of ratification by the principal, which was not per-
formed by the agent, as agent, and in behalf of the prin-
cipal. 1 Pars. on Con. 287. The evidence shows that
Jones distinctly disclaimed any authority to speak for Mac-
Donald, and gave to plaintiff only his own personal assur-
ance that MacDonald would indorse. There was nothing
that MacDonald could legally ratify; and absolutely noth-
ing in the fact of his subsequent indorsement that could,
as to him and his undertaking, relate back to the time
when the money was loaned. He must be regarded as
first coming upon the scene when his name is put upon
the paper. The actual situation at that moment must
furnish the rule for the determination of his case. Of
course, the reverse would be true if any authorization,
express or implied, positive or inferential, could be fastened
upon him for the promise made by Jones.

The legal import of MacDonald's act in putting his name
upon the note can be nothing more than what he intended
it to be when he did it. The law will not affect him with
the secret purposes of others, or with previous transactions
of which he was ignorant. His act was not even a volun-
tary fulfilment of Jones's promise, because he knew nothing
about that promise. It was, according to the testimony,
an indorsement for the purpose of enabling his friend Jones
to borrow $500 on its security. Had this been the real
transaction, and the actual indorsement obtained the money,
no further consideration would be necessary to make it a
binding obligation upon the indorser. But such was not
the transaction. The money had already been loaned upon
other security. That other security included, it is true, a
certain promise in reference to MacDonald. But, *as against
him*, that promise was void for every purpose; and no
amount of consideration passing between the plaintiff and
Jones could give it the least vitality or capacity to charac-
terize the indorsement when actually made. The learned
judge below said: "If the plaintiff had originally loaned

the money on the strength of the indorsement of Lodge and Johnson, without reference to the promised indorsement of MacDonald, and MacDonald had subsequently, at the request of Jones, added his name to the note, he could not have been held. The contract evidenced by his signature would have been without consideration and not enforceable." This is true. But it would be equally true if it included a direct reference to the promised indorsement of MacDonald ; which was wholly inoperative as to him, and upon which the plaintiff's recourse, if any he has, must be upon the defendant Jones, who made it.

By way of illustration, let us suppose that when MacDonald was applied to for his indorsement, the plaintiff and Jones had informed him thus : " This note has been executed and delivered by maker and indorsers, and the money which was to be loaned in consideration thereof has been paid over to the maker, so that the note now belongs to Mr. Howard, the holder. But the delivery and payment were only conditional, and were agreed to be inoperative unless you should also become an original indorser in consideration of the loan. We therefore request you to indorse the note *nunc pro tunc*, as of a time prior to the last delivery and the payment of the money ; otherwise, the money must be returned and the note cancelled." This would have fairly apprised MacDonald of the situation, and of the grounds upon which it is now proposed to hold him. Had he then put his name upon the note, he would have done so with his eyes open, and the strongest case to be made against him out of the circumstances, would have been established. But is it to be found in any known legal rule, or in the spirit of our jurisprudence, that a man who is kept in ignorance, by those with whom he is dealing, of the essential elements and conditions of his undertaking, shall be held to the same accountability as if all had been frankly laid before him? We think not. Inasmuch as the true situation was not made known to MacDonald, he must be

treated in this case according to the facts as they existed, and not according to his erroneous impressions about them, which the plaintiff might have corrected, but did not. He is thus in the position of one who has written his name across the back of a note after it has become the property of the holder, without any new consideration for so doing. In that case he cannot be held liable at law.

The judgment is therefore reversed and the cause remanded. All the judges concur.